**PUBLISH**

**UNITED STATES COURT OF APPEALS**

<u>Filed 10/22/96</u>**TENTH CIRCUIT**

---

GEOFFREY E. MACPHERSON, LTD.,
an English corporation,

      Plaintiff-Counter-
      Defendant-Appellee,

v.

BRINECELL, INC., a Nevada
corporation; TIM THEMY-
KOTRONAKIS, an individual,

      Defendant-Counter-
      Claimant-Appellant,

   and

BRINECELL, INC., a predecessor Utah
corporation,

      Defendant-Counter-
      Claimant.

No. 95-4077

---

Appeal from the United States District Court
for the District of Utah
(D.C. No. 92-C-634 B)

---

Mary Anne Q. Wood, Wood Quinn & Crapo, L.C., Salt Lake City, Utah, for Appellee.

Robert L. Booker, Booker & Associates, Salt Lake City, Utah, for Appellant.

---

Before HENRY, LIVELY,[*] and MURPHY, Circuit Judges.

HENRY, Circuit Judge.

Appellants, Brinecell, Inc. and its principal shareholder, Tim Themy-Kotronakis (collectively "Brinecell"), appeal the judgment entered by the United States District Court for the District of Utah in favor of appellee Geoffrey E. Macpherson, Ltd. ("Macpherson"). The district court's judgment finalized two prior orders, one granting Macpherson's motion for summary judgment in favor of its breach of contract claim and the other granting Macpherson's motion for summary judgment on Brinecell's fraud counter-claim. Brinecell argues that a factual dispute as to whether Macpherson properly returned goods pursuant to their contract exists and precludes summary judgment in favor of Macpherson on its breach of contract claim. Brinecell also contends that the district court erred by entering summary judgment for Macpherson on Brinecell's fraud counter-claim because a genuine issue of material fact remains as to Macpherson's capability to distribute Brinecell products in England. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

---

[*] The Honorable Pierce Lively, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

## I.  BACKGROUND

Macpherson is an English corporation that has been providing services to the textile industry in England and Europe for over fifty years.  Brinecell is a Nevada corporation that manufactures liquid purification equipment and has its principal place of business in Salt Lake City, Utah.  The relationship between these two parties began on January 7, 1992, when Macpherson received from Brinecell a brochure advertising a machine that treated liquid industrial effluent.  The advertisement contained the following description of the Model 201 purification machine:  "Very simple!  Fill a tank with 25 gallons (100L) of your normal dischargeable effluent.  Add from 1% to 3% NaCl and lower its pH to 6.  Nothing else!"  Aple's Supp. App. at 40.  The brochure made the following offer:

> We will ship you our '201' within 45 days from receipt of your check for only $15,000!  You can use it for 30 days.  If it does not absolutely thrill you with its overall performance, return it in good order, freight collect, for immediate refund of your $15,000.

Id.  Macpherson believed such a machine might be useful to its clients in the textile industry and initiated negotiations with Brinecell to purchase a purification machine and possibly become Brinecell's exclusive European dealer.  During these negotiations Macpherson represented to Brinecell that "if it had an exclusive contract with Brinecell, it was capable of selling Brinecell's equipment throughout a much larger area of England than Brinecell could on its own."  Aple's Supp. App. at 15 (Amended Counter Claim for

3

Fraud); see also Aple's Br. at 4.

The parties came to an agreement whereby Macpherson would pay $35,000 to Brinecell in exchange for a 201 purification machine and Macpherson would have forty-five days to return the machine for a full refund if test results were unsatisfactory. The forty-five-day period would begin when Brinecell's chemical engineer arrived at Macpherson's place of business to install the Model 201 and to help Macpherson test it.

Shortly thereafter, Macpherson received the Model 201, and Brinecell received from Macpherson a check for $35,000. Brinecell's chemical engineer arrived at Macpherson's place of business on April 18, 1992. On May 19, 1992, Macpherson faxed Brinecell a letter notifying it that Macpherson was not satisfied with the Model 201 and was returning it according to the terms of the agreement. The letter asked for the return of the $35,000 paid to Brinecell. On May 22, 1992, Macpherson faxed Brinecell to notify it that the Model 201 would be dispatched on Saturday, May 23, for arrival in Salt Lake City on May 24, and asked for confirmation of the return of the $35,000. This transmission included the exact way-bill number and the flight number for the Model 201's shipment. On or about May 26, 1992, the Model 201 arrived in Salt Lake City, addressed to Brinecell and bearing Macpherson's return address. The invoice displayed both the way-bill number and the flight number that Macpherson had faxed to Brinecell, but the invoice incorrectly listed the shipment's contents as "embroidery machine spares." Aple's Supp. App. at 92. Based on this error, Brinecell refused to accept the shipment.

4

Macpherson contends, and Brinecell does not refute the contention, that the error was made by the shipping company. After being notified by the shipping company of Brinecell's refusal of the shipment, Macpherson, in a letter faxed to Brinecell on June 2, 1992, protested Brinecell's refusal and asked again for the return of the $35,000. Brinecell did not return the $35,000.

Macpherson initiated this suit for the return of the $35,000 and other damages. Brinecell counter-claimed that Macpherson had fraudulently misrepresented its ability to market Brinecell's purification equipment in England by representing that "if it had an exclusive contract with Brinecell, it was capable of selling Brinecell's equipment throughout a much larger area of England than Brinecell could on its own." Aple's Supp. App. at 15 (Amended Counter Claim for Fraud). On September 23, 1993, the United States District Court for the District of Utah granted Macpherson's motion for partial summary judgment on the breach of contract issues. On September 20, 1994, Macpherson moved to dismiss Brinecell's counter-claim, arguing that the statement upon which Brinecell based its counter-claim referred to a future event, not a present fact, and therefore could not constitute fraud. On November 16, 1994, a magistrate judge recommended denial of this motion, finding that the statement had referred to Macpherson's presently existing ability to distribute Brinecell's machines. Macpherson subsequently moved for summary judgment against Brinecell's fraud counter-claim, and on April 23, 1995, the district court granted Macpherson's motion after finding

Macpherson's representation to be true as a matter of law. After voluntarily dismissing its own fraud claim, which was the only remaining issue in the case, Macpherson moved the court to enter final judgment. On May 9, 1995, the district court made final all of its prior orders and entered judgment against Brinecell for damages in the amount of $35,000 plus interest and costs.

## II.  DISCUSSION

We must first address the threshold issue of subject matter jurisdiction, even though it was not raised by either side. See Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir.) ("[I]f the parties fail to raise the question of the existence of jurisdiction, the federal court has the duty to raise and resolve the matter."), cert. denied, 116 S.Ct. 174 (1995). The $35,000 payment upon which Macpherson' s breach of contract claim is based is insufficient, standing alone, to convey jurisdiction to the district court in this diversity action. See 28 U.S.C. § 1332 (requiring in diversity actions that the matter in controversy exceed $50,000, exclusive of interest and costs). In addition to recovery of the $35,000 deposit, Macpherson's complaint asked for an additional $35,000 or more in punitive damages. Although Utah law, which we apply in this diversity action, see Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938),[1] does not allow punitive damages to be

---

[1]     Utah law directs us to apply the "most significant relationship" analysis to determine choice of law in a contract action. See Rocky Mountain Helicopters v. Bell Helicopter, 24 F.3d 125, 129 (10th Cir. 1994). Because both parties proceed on the assumption that Utah substantive law applies to their dispute, we apply that law without further analysis. See

awarded for breach of contract, see, e.g., Jorgensen v. John Clay and Co., 660 P.2d 229, 232-33 (Utah 1983), Macpherson's complaint included a second cause of action for fraud, which Macpherson later voluntarily dismissed so that the district court could enter final judgment against Brinecell based on the two prior summary judgments.  Under Utah law, punitive damages may flow from a fraud claim.  See, e.g., Ong Int'l (U.S.A.) Inc. v. 11th Ave. Corp., 850 P.2d 447, 457-58 (Utah 1993).  Because Brinecell did not challenge Macpherson's purported jurisdictional amount, we assume it was made in good faith.  See Strey v. Hunt Int'l Resources Corp., 749 F.2d 1437, 1441 (10th Cir. 1984), cert. denied, 479 U.S. 870 (1986).  Thus, examining the complaint at the time it was filed, see Watson v. Blankinship, 20 F.3d 383, 387 (10th Cir. 1994), and aggregating Macpherson's claims for breach of contract and fraud, including the claim for punitive damages, see Alberty v. Western Sur. Co., 249 F.2d 537, 538 (10th Cir. 1957), it cannot be said "to a legal certainty that the claim is really for less than the jurisdictional amount," see St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289 (1938).  Therefore, the complaint satisfied the jurisdictional amount required by 28 U.S.C. § 1332.[2]

---

Missouri Pacific R.R. Co. v. Kansas Gas & Elec. Co., 862 F.2d 796, 798 n. 1. (10th Cir. 1988).

[2]     Furthermore, Brinecell's counterclaim, which was compulsory, see Fed. R. Civ. P. 13(a), and for damages far in excess of $50,000,  would provide a sufficient independent basis for federal jurisdiction.  See 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3706, at 115-17 (1985) (presenting the argument that when a plaintiff's complaint lacks the necessary jurisdictional amount, a defendant's compulsory counterclaim may supply the jurisdictional amount for plaintiff's claim without either party being disadvantaged thereby); see also  Fenton v. Freedman, 748 F.2d 1358, 1359 (9th Cir. 1984) (holding that a defendant's compulsory counterclaim which exceeded the jurisdictional amount

We review de novo the district court's granting of Macpherson's motions for summary judgment, applying the same standards as those used by the district court. Valley Camp of Utah, Inc. v. Babbitt, 24 F.3d 1263, 1267 (10th Cir. 1994). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In order to withstand a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). We review the record in the light most favorable to the party opposing a motion for summary judgment, Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991); however, more than a mere "scintilla" of evidence is needed to create a genuine issue of material fact, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## A. Breach of Contract Issues

In support of its motion for summary judgment, Macpherson stated that it had returned the Model 201 in good faith before the forty-five-day trial period had elapsed

---

was sufficient to invoke the jurisdiction of the district court even though the plaintiff's complaint did not aver the required jurisdictional amount); Motorists Mutual Insurance Co. v. Simpson, 404 F.2d 511, 514-15 (7th. Cir. 1968) (stating, in dictum, that when a defendant files a counterclaim for more than the jurisdictional amount, without previously objecting to plaintiff's failure to claim the necessary jurisdictional amount, the amount counterclaimed may provide the basis for federal jurisdiction), cert. denied, 394 U.S. 988 (1969).

and that it was therefore entitled to return of its $35,000 payment. In response to this motion, Brinecell argued that Macpherson failed to return the Model 201within the 45-day trial period as required by the contract because the shipping invoice was mislabelled. The district court held that Brinecell had violated its duty of good faith by failing to refund Macpherson's $35,000 based on the shipping company's clerical error.

We agree with the district court that Brinecell's argument is without merit. Pursuant to the duty of good faith and fair dealing under Utah law, the parties to a contract constructively promise not to intentionally impair the other party's right to receive the fruits of the contract. See St. Benedict's Dev. Co. v. St. Benedict's Hosp., 811 P.2d 194, 199 (Utah 1991). Parties to a sales contract must exercise their express rights in accordance with this over-arching duty. See Utah Code Ann. § 70A-1-203. Macpherson informed Brinecell of the expected return date of the equipment, the exact way-bill number, and the number of the flight carrying the Model 201 from England. The invoice received by Brinecell lists Macpherson as the shipper, the way-bill number and the flight number. Acting in good faith, anyone in Brinecell's place would have known what was contained in the package or, at least, inquired of Macpherson. Brinecell neither accepted the shipment nor contacted Macpherson and offers no excuse for its inaction. This is such a clear breach of the duty to perform the contract in good faith that no reasonable jury could have decided the issue in Brinecell's favor. Therefore, the district court properly entered summary judgment against Brinecell. See Anderson, 477 U.S. at

9

248 (summary judgment may only be averted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

We note that the district court could have relied also on Utah Code Ann. § 70A-2-327(1) to resolve this dispute. This section of the Uniform Commercial Code as codified in Utah provides in relevant part: "Under a sale on approval unless otherwise agreed . . . after due notification of election to return, the return is at the seller's risk and expense . . . ." Utah Code Ann. § 70A-2-327(1). Brinecell does not dispute that the shipping company, not Macpherson, mislabeled the Model 201 as embroidery spare parts. Macpherson properly notified Brinecell of the return and the returned goods arrived within the agreed forty-five-day return period. Pursuant to the Utah Code, Brinecell bore the risk of any shipping errors and has no legal claim under these facts for damages that might result therefrom.

On appeal, Brinecell makes two additional arguments which it failed to make below in opposition to Macpherson's motion for summary judgment. Specifically, Brinecell now contends that the terms of the contract are ambiguous and that Macpherson lacked the expertise necessary to properly test the Model 201 before returning it for a refund. We will only briefly address these recently acquired theories. See Farmers Ins. Co. v. Hubbard, 869 F.2d 565, 570 (10th Cir. 1989) ("This court will generally not address issues that were not considered and ruled upon by the district court. The narrow exceptions to that general rule relate to issues of jurisdiction . . . and questions of

sovereign immunity.") (citations omitted). As for Brinecell's argument that the contract is ambiguous, Brinecell clearly stated the opposite below, conceding that it did "not argue with Plaintiff's statement of facts 1-17." See Aple's Supp. App. at 87 (Opposition to Plaintiff's Motion for Partial Summary Judgment and Memorandum in Support Thereof). Facts 8, 9, and 10 in Macpherson's Memorandum in Support of Partial Summary Judgment describe the terms of the agreement. See Aple's Supp. App. at 22-23 (Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment at iii-iv); see also Aple's Supp. App. at 117 (Order of the district court granting Plaintiff's Motion for Partial Summary Judgment) ("The parties are agreed as to the terms of the contract and the right of the plaintiff to return the goods if unsatisfactory within 45 days.") (emphasis added). Brinecell and its counsel run the risk of being sanctioned when they make for the first time on appeal an argument that was specifically abandoned before the district court. See Fed. R. App. P. 38; 28 U.S.C. § 1927.

Brinecell's second new argument -- that Macpherson lacked sufficient expertise to adequately test the Model 201 prior to returning it -- is equally meritless. The parties clearly agreed that Macpherson could return the Model 201 if it was unsatisfied with the outcome of tests it performed during the forty-five-day trial period. No particular tests were required. Of course, Macpherson had a duty to test the Model 201 in good faith. See Utah Code Ann. § 70A-1-203. However, Brinecell conceded in the district court, see Aple's App. at 87 (Brinecell's Opposition to Plaintiff's Motion for Partial Summary

11

Judgment and Memorandum in Support Thereof), that "[b]y May 19, 1992 -- well within the 45 day period -- Macpherson had run sufficient tests to discover that the Model 201 was unsuitable for its intended purpose," Aple's App. at 24 (Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment at v).  Again, Brinecell should have checked the record for its previous admissions before making such groundless arguments before this court.

## B.  Fraudulent Misrepresentation

Brinecell's counter-claim alleged fraud against Macpherson.  Under Utah law, a person who knowingly or recklessly makes a false representation of an existing material fact for the purpose of inducing another person's reliance thereon and upon which the other person reasonably relies may be liable to that person for any damages resulting therefrom.  See Horton v. Horton, 695 P.2d 102, 105 (Utah 1984).  At issue here is Macpherson's representation that "if it had an exclusive contract with Brinecell, it was capable of selling Brinecell's equipment throughout a much larger area of England than Brinecell could on its own."  Aple's Supp. App. at 15 (Amended Counter Claim for Fraud); see also Aple's Br. at 4.  Macpherson initially moved to dismiss Brinecell's counter-claim on the grounds that fraud must be based upon a statement of a presently existing fact, not a future occurrence.  A magistrate judge denied Macpherson's motion to dismiss, holding that Macpherson had been referring to its then existing capabilities.

12

Macpherson subsequently moved for summary judgment, arguing that the statement was true. Noting Macpherson's vast contacts in England's textile industry and Brinecell's complete lack of any references in England, the district court granted Macpherson's motion for summary judgment.

Without addressing the somewhat more difficult issue of whether Macpherson's statement referred to a present or future fact, we hold that there is no genuine issue as to the truth of the statement. Macpherson argues that it was in a better position to distribute Brinecell's products in England. Brinecell's argument that Macpherson's lack of expertise made it impossible for it to effectively distribute Brinecell's products is irrelevant to the truth of Macpherson's representation. Macpherson's representation makes neither reference to nor assertion of its expertise in Brinecell's products. Rather, the statement refers only to Macpherson's position in the English market relative to Brinecell's. Brinecell had no contacts in England, while Macpherson was a well established participant in England's textile market. Macpherson was without any doubt "capable of selling Brinecell's equipment throughout a much larger area of England than Brinecell could on its own," Aple's Supp. App. at 15; see also Aple's Br. at 4. No reasonable jury, confronted with the evidence presented in support of and in opposition to the motion for summary judgment, could have found in favor of Brinecell. Thus, the district court properly granted Macpherson's motion for summary judgment. See Anderson, 477 U.S. at 248 (summary judgment may only be averted "if the evidence is

13

such that a reasonable jury could return a verdict for the nonmoving party.").

## CONCLUSION

For the forgoing reasons, we AFFIRM the judgment entered by the district court.

The mandate shall issue forthwith.